Well, that was the first item on my agenda, so let me address that, your honor. So you don't need to address it. We're going to wait. I will not address the constitutional question. What I was going to say was this, that I was going to say, and I don't need to say it, we're all aware that the Weyrich and Black decisions were argued on Tuesday, and I've had a chance to review those transcripts, and it's very hard to avoid the conclusion that the Supreme Court is either going to dramatically limit the scope of the honest services fraud statute or strike it entirely. Obviously, if it does the latter, all of the honest services convictions in this case will go. But I was going to say that I would submit that even without what is likely the great assistance that Black and Weyrich decisions from the Supreme Court will supply, that this court can reverse Mr. Garrido's convictions on the basis of arguments that are not dependent on that assistance, and they are these, that even under these courts' present precedents, which have not been challenged. And the reason for that is that the government in this case wisely, in a sense, filed an indictment that charged a quid pro quo, that as to our prong of this, which is the Klistoff contract prong, as opposed to the housing project prong, which is Mr. Robles' concern alone, that Mr. Garrido and Mr. Robles were charged in the Klistoff contract allegations under theory that Robles assisted Klistoff to get this contract in exchange for, among other things, campaign contributions. And so the government charged an in-exchange bribery allegation in this case. And at the time, McCormick held that in the context of the Hobbs Act, you have to have a quid pro quo instruction. This court, during the pendency appeal in Kincaid-Chauncey, has said that that logic obviously applies to honest services cases as well, and therefore you have to have an instruction that to convince somebody on the theory that a campaign contribution was a bribe, you have to have an explicit quid pro quo. So the government charged that, but the court did not instruct on the McCormick principle. And, in fact, the evidence didn't prove a quid pro quo. Now, normally, if I was up here arguing insufficient evidence as to an offense, it would be a tough road to hoe. But the court below made this very simple, because, frankly, when I went in on the new trial motion and said we don't have a quid pro quo instruction and we needed one and they didn't really prove a quid pro quo, the district court said, you know what, let's forget about the bribery theory entirely and I will make a ruling that the convictions, Mr. Guido's convictions, can rest on an undisclosed conflict of interest theory. That's in the record. That's not only in the record in denying our new trial motion, Your Honor. The government has come before you and said, you know what, let's forget about bribery. Mr. Guido has argued he had a defective instruction because there's no McCormick quid pro quo instruction. He's argued there's insufficient evidence of a quid pro quo. We, the government, aren't even going to respond to those. We'll concede those. Well, that's what I wanted to ask you about. The government's made the concession. Are we bound by it? Well, are you bound by it? I suppose not, Your Honor. I suppose not. But we would be bound by what the trial judge said, I suppose. The trial judge actually ruled that he was not giving it to the jury as a bribery case? That's right. What the trial judge ruled is that I do not have to listen to your argument or sustain your argument that I should have given a quid pro quo instruction, nor do I really need to address your argument that the evidence was insufficient of a quid pro quo, because I find the indictment was broad enough to include an undisclosed conflict of interest theory. And so the court did not say the evidence was sufficient. It didn't say that the instructions were adequate over bribery theory. It said I'll sustain the conviction on an undisclosed conflict of interest theory, and that raises three huge problems. There is no doubt, and I can cite you to the pages, that the court said to this jury, you can convict them of honest services fraud on the basis of accepting a bribe. There is no doubt that the government argued to the jury in closing you can convict them on a bribery theory. So if the bribery theory was defective, and it was as a matter of law, and it was also unsupported by the evidence, then the fact that the jury got that theory means the convictions have to go, unless this Court under Yates and Leary could say without a doubt they were based on an undisclosed, that these convictions were based on an undisclosed. Let me ask, why would we want to go there while we're waiting for the Supreme Court? You know, Judge, you probably have a lot of work to do. I can't think of a reason why you would need to address these issues if in fact this statute is about to be declared unconstitutional. You know, I think your argument about what the trial judge did is pretty persuasive. But as far as the facts go, I look at the facts, and it seems to me that Guido is in the traditional position of the bag man. He's being paid off, and of course he's paid off so he can channel it to the bribe taker. And those facts cry out. And to have him get off is a miscarriage of justice. It may result.  Well, you know, I was reading, if you can indulge me, this is a very interesting point, and let me just say this. I was reading Justice Scalia's remarks in the argument on Tuesday. And what he was saying is, this statute is vague. We don't know what it means. And the government was sort of arguing, well, gosh, it should mean at least bribery. And what he said is, look, if we had a statute that said don't do anything bad, everybody should know that you shouldn't kill anybody. But we couldn't sustain that statute as constitutional simply because they ought to know that murder is wrong. That is a vague and unconstitutional statute. So I guess the response to that, Your Honor, is this. If these convictions are reversed for defective instructions on the quid pro quo theory, it doesn't mean that the government can't attempt to try Mr. Garrido if it can shape an indictment that contains a valid legal theory and get valid instructions on it and gain a conviction. But, you know, the fact is that when you look at the facts of this case, you have a sense, look, there's something going on here that oughtn't to go on. But we've got to do better than that. I mean, we have to have a conviction under a statute, frankly, that let Mr. Garrido know what he was supposed to do and what he wasn't. It takes the undisclosed conflict of interest. I would argue that even if that was the only theory that went to the jury, and it didn't. It clearly went on the defective bribery theory. And even if there was and even if the government had argued that in closing, which they didn't, that the evidence that Mr. Garrido had any knowledge of what Mr. Robles' disclosure obligations would be, because he'd have to know them. He'd have to be a co-conspirator in the sense of saying, you, Mr. Robles, are going to deprive the city of Southgate or the state of your disclosure obligations, and I'm going to join you in that fraudulent attempt. He would have to know those obligations and seek to deprive the city of those honor services. And there isn't, put it this way, Judge, there isn't anybody who could read this record and say, oh, the government proved beyond a reasonable doubt that, not something about bribery, but that Mr. Garrido was aware of these statutory obligations to file disclosure forms and joined in the criminal intent to deprive the state or the city of the benefit of those disclosure forms. So we do need to be precise in the statutes. We need to be precise in the indictment. We need to have people who are put on notice of what they did wrong under a valid theory. We have instructions that accord with that theory. And then if we get a jury conviction, we get a jury conviction. But, I mean, that's the problem with the whole honor services area is what is it? And, you know, you read Weirich, you read Chauncey Kincaid, and the courts are trying after 20 years to make sense of what this is or isn't, and that's why the Supreme Court took it. Frankly, I think it's going to be declared unconstitutional, and there's going to be people who have spent five or six years in prison under an unconstitutional statute. Mr. Garrido was released pending appeal. He is. And I think there's a natural follow-up question to that, but I'll leave it to Mr. Robles' counsel. But, look, it's impossible to argue that the Court should wrestle with these honor services questions when it knows it's about to get guidance from the Supreme Court. And, yes, why take on this at all?  Thank you, Your Honor. Good morning. Thank you for allowing a Boston lawyer to appear before you. I was asked to come here because I have a particular perspective of the role of state law. When the United States, when the Deputy Solicitor General appeared before the Supreme Court on Tuesday, he, too, had a theory, and he started to articulate the theory, and Justice Ginsburg stopped him right away. And she said, I want to address this in the Weirach case. We have a case here, and I want to address the issues in the case because there is something very important going on here in the Ninth Circuit. You have said, Mr. Dreeben, to us, and we read it in the record, that a nondisclosure standing in and of itself violates the honor services statutes. And the Solicitor General responded, oh, yes, that's what's in the paper you're reading from. But we clarified that after the fact. And I'm not here to argue to you that a mere disclosure, failure to disclose, violates the conflict of interest theory of honor services mail fraud. What it requires, what we're here to argue for, is a standard that requires official action in return for the acts, in return for the things that have been given. In this case, my client, to answer the question left for me, my client is in prison. My client has been in prison for three years. The argument that is made to this court in this case is 180 degrees different than the argument that the United States Supreme Court heard from the Department of Justice on Tuesday. Your client was convicted of other charges as well. He was. He was. Right? That is clearly the case. Let's just for a minute, just bear with me one minute. If you were to cut out all the honest services counts, just look at the bribery counts, let's assume for the purposes of this question that the sentences, his conviction is affirmed on those bribery counts. What would have been his sentence? I've never done the calculation, Your Honor, but I believe it would be the same. I've not, again, I wasn't trial counsel. I came after to offer that perspective that I suggested, but logically speaking, the guidelines I would suggest would have been followed at the time, and I think it would be the same sentence. It would have been what? I'm sorry, I didn't get the answer. Logically speaking, I think the guidelines would have been followed, and the sentence would be the same, I believe. I do not believe this is a case where we were just dealing with the maximum sentences under the statutes. I believe the guidelines were applied. But I want to focus, because it is clearly the case, and the court is clearly aware of it, that there is something going on here with respect to the notion of this honest services that is within 1346, and I want to suggest to you that it isn't a function of confusion necessarily on the part of just the courts, or even the courts, but it is a function in part of directly inconsistent statements that get made to the courts by the Department of Justice, by the U.S. Attorney's Office, and I want to illustrate with another one of those very direct points from the exchange that occurred in the Supreme Court on Tuesday. I think you would probably agree that the kickoff, or at least the kickoff to the second half maybe, with respect to this honest services debate, was Justice Scalia's dissent in the Sorich case, and at page 38 of the brief that you have before you, the government tells you that it is immaterial, that it doesn't matter whether or not the things that were given in this particular case were campaign contributions given to family and friends, and they cite Sorich, and the brief was right at the time of cert being denied, so they give you the cert denial. And when Mr. Dreeben appeared before the Supreme Court on Tuesday and was asked about, again, the theory that he wanted to advance to the court for what's going on with honest services, the theory was that it involved a breach of the duty of loyalty, a breach of a fiduciary duty drawing from the case laws, which involved official action for pecuniary, personal pecuniary gain, and he was asked in his presentation by Justice Scalia, well, does it matter whether it's to the individual personally? And he said, well, yes, it matters. What about my son? And Justice Scalia says, it's an adult son, and the deputy solicitor general of the United States said, no, if it were your son, that's not you. It falls outside of the statute. And you are being told just the opposite in footnote 22, I think, on page 38 of the government's brief. Those aren't the only examples of things being told to the court, to the Supreme Court, that are at variance with the things that are being told to you. So you want us to wait for the Supreme Court's decision? Well, if you give my client bail pending appeal, yes. But there is a very ‑‑ Well, your client was convicted on another account. That was the purpose of my question. I got that already, Your Honor. So I'm not asking you to wait on the Supreme Court. I'm not, because I represent a man who is in jail, and I think wrongly. And with respect to this ‑‑ Let me ask you, is there any possibility that the decision by the Supreme Court that either narrows the scope of the statute or invalidates the statute, that would have any bearing on the conviction, on the bribery conviction? Let me say, let me respond with a direct yes, it has a bearing. And the case that I talk about most in my brief on that point is the Murphy case, United States v. Murphy, and it's a Third Circuit case. Bribery, notwithstanding some learned treatises that I've read, is bribery. Very careful what you say about bribery. I'm going to be very, very careful. It is inconceivable to me, Your Honor, that there would not be some pour over in terms of instructions to a jury or some ‑‑ the impressions that a jury would take with respect to bribery under 666 and bribery under 1341 and 1346. The notion that McCormick v. Everett, the United States v. McCormick, dealing with campaign contributions and the role they play in our society would be applied only to the particulars of the McCormick case and not to statutes generally that deal with gifts, gratuities, prides, whatever you want to call them, is incomprehensible to me. The rationale that the U.S. Supreme Court advanced in McCormick applies fully across the board to each of the statutes, whether it's 201B or C, whatever it is, the rationale applies. And the rationale is based in part on federalism, among other things, and it's based upon our system of government. But what this individual was charged with, the dominant charge, was theft of honest services. It is what was argued. What was in this indictment related to the violations of conflict of interest-related provisions of California law. And, you know, it's not new ground to suggest that you need to convict on the basis of the indictment which is returned. That's pretty basic due process requirements, and it was violated in this case. And that is because when it came time to charge this jury with respect to all of the elements of California law that were charged, the judge essentially left it to the jury to decide what a disqualifying interest would be, what a financial interest would be, and that's precisely the evil that the Third Circuit weighed against in the Murphy case that I told you was the principal case that I thought mattered here. It's the spillover effect on the 1346 error, if you will, to the 666 that makes it particularly troublesome, and it should trouble this Court just as it did the Murphy Court. Okay. Let me just lend assistance, because I think this is a very important thing to make a suggestion, Your Honor, because I had the benefit of the brief here, indeed, from Mr. Robles with Mr. Cogley did not. The honest services scheme that is now seriously in doubt, that was charged against Mr. Robles alone, had proceeds in the amount of like a million dollars, and there were money-laundering charges on top of those. So the guidelines for that million dollars and the money-laundering is extremely high. The four bribery charges, which assuming they could be sustained awaiting that, had proceeds somewhere around $10,000 or $20,000. So my suggestion would be that as to that question, what counsel should do is submit a bail motion to this Court that lays out these figures, because I think the answer is going to be that if the Court sets aside the honest services accounts, the likely guidelines calculation on bribery might have been less time than Mr. Robles has now served. Thank you. I appreciate the help very, very much. Thank you. The end of this kind of tandem kind of presentation, there's one other notion that I want to advance from the arguments that were advanced in Washington on Tuesday. I've read the transcript. I don't know about your colleagues, but I've read the transcript. The simple point is the weight might be long. And the weight might be long because the constitutional question, how do I read these things, kickbacks, bribes, into this statute, which just says deprive another of the right to honest services, the equivalent of saying something is bad, that may have to await the skilling decision. And the Supreme Court has granted cert in skilling. The skilling case has not been briefed. So the weight might not be a period of a month or two months or four months. The weight for the death knell for honest services, if indeed it's coming on the basis of the vagueness of the statute, might have to await skilling. I would suggest to the court that the kind of concern that I'm articulating with respect to the contradictory arguments that are being made to the Supreme Court and to this circuit, even on a case that comes from this circuit, the Weirach case, it echoes to me the concept of judicial estoppel, that Justice Ginsburg's opinion in New Hampshire versus Maine in 2001 was the first case that I can think of that fully explicated the doctrine. There's a danger here. The doctrine exists, I submit, to prevent not intentional acts by a litigant to try and speak out of both sides of its mouth to say whatever the exigencies of the particular case require to get a win. That's not what I'm suggesting. But I think the doctrine exists because there is the potential for one court or another to get misled. And in the end, when I sat here this morning and heard the first argument, and we're talking about the integrity of the judicial system, and I heard it in, I think, the third case, that doctrine exists to protect the integrity of the courts. And I really think it has an application in this case. Do you want to take some time for? I'd prefer to take it for rebuttal, if I may. Thank you. Sure. May it please the Court, Ilana Artson on behalf of the United States. And I would like to begin by addressing the bribery counts under section 16. How about telling us if you'll agree that we should wait for the Supreme Court on the other? Your Honor, yes. I agree that it is difficult to know what the contours of this argument are going to look like. And I would request an opportunity for all parties to brief the honest services counts  So that takes care of about half of the argument, right? Probably more than half of it. More than half. So you're left with the bribery. Because all we have left are the bribery counts under section 16. All right. Now, they say that bribery didn't amount to much. Your Honor, I'm in the same position as Mr. Robles' counsel. I did not do the sentencing calculations because I didn't focus on that issue. There was not a bail motion pending. There weren't any sentencing claims. I think the best way for the court to address that issue would be for Mr. Robles to make a bail motion and for the parties to brief those issues. Because I don't know off the top of my head what the relevant conduct provisions would look like and what the guideline range would look like. So you would like to brief that and have the defendant brief it? If the defendant wants to make a bail motion, he should make a bail motion with his arguments and will respond. All right. Why don't you do that? But I think the first step probably should be to discuss the bribery counts and why those should be affirmed and why the issues raised on the bribery counts are completely separate and apart from any issue that's before the Supreme Court on the scope of the honest services fraud statute. Did you try the case? I was not trial counsel. The attorneys who have tried the case since left the office. I'll tell you myself. I thought you had a great bribery case, and why they went off on the other theory is a mystery. I don't know the answer to that question, Your Honor. But be that as it may, we now have these bribery counts before us, and they should be affirmed. The only challenge that the defendant has raised to the bribery count is that the statute requires an intent to be influenced in connection with his official acts or duties. And that argument, specifically with respect to the bribery counts, fails for three reasons, at least three reasons. First of all, it is contrary to the plain language of the statute. The statute prohibits accepting anything of value intending to be influenced, and I quote, in connection with any business transaction or series of transactions, end quote, of that government entity. That language is very broad and expansive. It says any business or transaction of the government entity. It doesn't say any business or transaction that relates to the recipient's official duties. It says any business or transaction. And relying on the use of that word any and the broad connotation that it has, the Supreme Court in Salinas focused on precisely that word and refused to narrow the statute to businesses or transactions affecting Federal funds. I think exactly that same reasoning applies here. The statute says any business or transaction. Clearly this trash contract is any business or transaction. The statute's plain language doesn't contain that requirement. Secondly, let's look at the purpose of the statute, and here's where the second and third arguments come in. The purpose of the statute, as this Court said in CMS, is to protect the integrity of Federal funds and to do so by preserving the integrity of the entities that distribute those funds. And in Sabry, the Supreme Court, following up on that same reasoning, said, you know, we don't think that bribed officials are worthy stewards of Federal funds. That's exactly the issue that we have here. The purpose of this statute is to protect the integrity of these entities that are receiving Federal funds, and if they have bribed officials who are the stewards of those funds, those are not appropriate stewards of Federal funds. And finally, the legislative history, as we've discussed a little bit, reflects that the statute was enacted to fill a particular gap in Federal law, and that gap arose from the fact that a number of courts determined that State and local officials did not constitute public officials for purposes of the Federal bribery statute in Section 201. And specifically, in order to fill that gap, this statute was passed to make State and local officials stand in the same shoes as public officials would for bribery. So the question is, under a Section 201 theory, does Mr. Robles' theory work? And it doesn't, because this Court and other courts have all held that a person may be convicted for bribery even though the action that they agree to is not within their ability to perform, it's not within their authority to perform, it's not within their power to perform. So for all of those reasons, completely separate and apart from the Honest Services statute, under 666, that argument must be rejected, and the bribery conviction should be affirmed. I think that these counts can stand on their own. These counts stand on their own. And I think the only point that we've really heard today is that somehow there was some sort of prejudicial spillover, which is an argument that was never made in the district court in connection with severance. It was never made at trial. It was never made in a new trial motion. It wasn't made in the opening brief. It wasn't made in the reply brief. The first time that argument has been made is today. And it appears that the only prejudicial spillover has to do with the failure to distinguish between gifts and campaign contributions, and I fail to see how that distinction has anything to do with a bribe. It may have to do with whether a gift has to be reported or whether a campaign contribution has to be reported. But whether it's a gift or campaign contribution, it's still a bribe. If it's a payment made with the intent to influence as required by the statute, it doesn't matter how it's characterized under State law. It's a bribe. So I really can't see that there's any prejudicial spillover in that sense. The only other place in which it appears that this spillover, really I'm not clear if the argument has been made, but what I thought I heard is, well, if there was a failure to instruct that bribery required a quid pro quo with respect to honest services fraud, is there some spillover? Again, I don't see the spillover. There was never any contention that the jury was not correctly instructed on the 666 counts. They were correctly instructed and they were correct. There was no challenge, if I recall, to the instructions on the 666? There's no challenge whatsoever to the instructions on the 666 count. The jury was instructed what they had to find in order to find bribery, that they had to find the intent to influence that's required under the statute. So I don't see that there's any way, shape, or form in which the honest services issues that are before the Supreme Court have any bearing on these bribery counts. And for that reason, those counts should be affirmed. And if there's an issue as to bail, that issue is one that we should brief and address. And we would also request the opportunity to do that after the Supreme Court has decided on the honest services issues. I do also just want to take a moment, given that I have a little bit of time remaining. Well, you don't need to take up our time. I also just want to make one final point, that even under the theory that, you know, even if there were some requirement in the bribery statute, which there is not, that there has to be a connection to the official duties, it's our position that there clearly was here. So if we – and that argument is really fairly made throughout the rest of our brief, that the distinction that the defendant has tried to draw between his official duties and his work as a power broker in some kind of private capacity is just a false distinction. It's a distinction without a difference, and the record here doesn't support it. And I would just close with the one piece of evidence that I think is most compelling on that point, and that came from the engineering contract for the sewer repair. And as Your Honors may recall, part of that contract involved requiring the successful bidder to hire Zoom media to perform some services. They balked at it, and the principal, Mr. Hunt, testified, we included that provision because we were ordered to do so by Mr. Robles representing the city. After Mr. Robles was recalled from office, the engineering company went back to the city council and obtained an amendment removing their participation. So even as a factual matter, we just don't think that this record supports that claim. And with that, we will submit. Thank you. Thank you. I'll limit my rebuttal to the rueful observation that Judge Pragerson, bound by his oath of truth-telling, did not tell me that I look younger than I appeared before this Court a year ago. Otherwise, we'll submit it, Your Honor. Repeat that. Unlike counsel in the first case, Judge Pragerson, you did not tell me that I look younger today than the last time you saw me a year ago. Yeah, but I've been watching him for 40 years. It's always a pleasure to hear you. That makes me feel better. Always a pleasure. Yeah. Oh, no. I will respond to the arguments on 666 only. First, when the assistant United States attorney quoted from the statutes, she placed emphasis on a part of the statutes. The portion of the statute that other courts have held carries with it the tie to an official act or official duties is the word influence. The statute prohibits the receipt of money to influence or reward Gadiada. The case that I think most recently does that is the Second Circuit's decision in United States v. Ganim. I don't think the issue had arisen before. I think it's a 2008 Second Circuit decision, United States v. Ganim. The comparison to 201 fails. And it fails on the basis of Sundiamond. In analyzing the plain language of the statutes, in that case, I believe it was 18 U.S. Code 201C, Justice Scalia's opinion focuses again on the plain words of the statute. And it's not because of an official act. For because of an official act is the words, the argument that the deputy solicitor general was making on Tuesday. It echoes the requirement in the statute 666 itself, influence. Influence what? The questions that the court was asking. And I would say, just as a matter of fact, that the arguments that we have made on 666 here today are fully briefed in both our, on both of our submissions. And I thank you for your courtesy. Thank you. You have a very soothing Boston accent. Well, it's all right. Because then another tip O'Neill. All right. We're done. We're done. Out. Thank you. Thank you.
judges: Pregerson, Noonan, Paez